1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

MAURICE ST. JAMES, JR.,

     Defendant.

_____/

No. CR 08-0304 PJH

**ORDER DENYING MOTION TO REDUCE SENTENCE**

     Before the court is the motion of defendant Maurice St. James, Jr., to reduce his sentence pursuant to the amended sentencing guidelines for crack cocaine offenses, which is now fully briefed and submitted.  Having considered the parties' papers and the relevant legal authorities, the court DENIES the motion.

**BACKGROUND**

     On May 2, 2008, St. James was charged with one count of possession with intent to distribute a mixture or substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii).  On September 17, 2008, St. James entered a guilty plea to the charge.  By judgment entered December 12, 2008, the court sentenced St. James to 200 months imprisonment for possession with intent to distribute 78.9 grams of cocaine base.

     Based on the amount of crack cocaine at issue, St. James's base offense level under the advisory Sentencing Guidelines was 30.  Amended Presentence Report ("PSR") ¶ 25.  The parties stipulated to the career offender provisions under § 4B1.1 of the guidelines, which resulted in an offense level of 37, reduced to 34 for acceptance of responsibility, a criminal history category of VI, and a guideline range of 262-327 months.

PSR ¶ 54; Dec. 10, 2008 Transcript ("Trans.") at 31.  The guideline range for the drug offense, without the career offender enhancement, was 130 to 162 months.  The offense carried a statutory term of imprisonment of ten years to life.  PSR ¶ 53.

Although the court concluded that St. James was a career offender, the court sentenced him below the career offender guideline range.  After reviewing St. James's criminal history, the court concluded that the career offender guideline range was higher than necessary to effectuate goals of the Sentencing Reform Act.  Trans. at 33.  The court then imposed a sentence of 200 months, based on the probation officer's recommendation.  Trans. at 35.

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("FSA"), Pub. L. 111-220, which reduced the statutory penalties for crack cocaine offenses and authorized the Sentencing Commission to promulgate the guidelines, policy statements, or amendments provided for in the FSA.  Accordingly, the Sentencing Commission promulgated Amendment 748, effective November 1, 2010, which reduced the base offense levels for crack cocaine offenses by revising the weight of drugs associated with each offense level.  USSG App. C, Amend. 748 (Reason for Amendment).  The Sentencing Commission subsequently promulgated Amendment 750, effective November 1, 2011, making the Amendment 748 changes permanent; and Amendment 759, making the Amendment 750 changes retroactive and modifying USSG § 1B1.10 to include the relevant portions of Amendment 750 in the list of amendments that may be considered for a retroactive sentence reduction.  *See* USSG App. C, Amend. 750 and Amend. 759 (Reason for Amendment).

On August 11, 2011, St. James filed a pro se motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) pursuant to the FSA and the amendments to United States Sentencing Guidelines lowering the crack cocaine offense levels.  On October 2, 2012, in response to the court's September 24, 2012 status order, defendant's most recent CJA-appointed attorney, Frank Bell, notified the court that he was unable to represent defendant in conjunction with the instant motion.  On October 5, 2012, the government notified the

United States District Court
For the Northern District of California

2

1  court that it would be opposing the motion, and advised the court that new CJA counsel

2  should be appointed for St. James to conduct full briefing on the motion.  Laurel Headley

3  was subsequently appointed as new CJA counsel for defendant and filed a notice of

4  appearance on October 11, 2012.  Defense counsel filed a supplemental opening brief on

5  the motion to reduce sentence on December 13, 2012.  The government filed its opposition

6  on January 3, 2013, and St. James filed a reply on January 17, 2013.

7  St. James contends that under the amended guidelines for crack cocaine offenses,

8  his adjusted offense level of 23, without the career offender enhancements, would yield a

9  guidelines range of 92 to 115 months, and that his sentence should be reduced from 200

10  months to a length of time not to exceed the mandatory minimum of 120 months in prison,

11  or a sentence that the court deems appropriate.  St. James is not eligible for sentence

12  reduction, however, because the career offender guidelines that were applicable to him

13  were not amended.

**LEGAL STANDARD**

15  The court may not modify a term of imprisonment that has already been imposed

16  except

17  in the case of a defendant who has been sentenced to a term of
   imprisonment based on a sentencing range that has subsequently
18  been lowered by the Sentencing Commission pursuant to 28 U.S.C.
   994(o), upon motion of the defendant or the Director of the Bureau of
19  Prisons, or on its own motion, the court may reduce the term of
   imprisonment, after considering the factors set forth in section 3553(a)
20  to the extent that they are applicable, if such a reduction is consistent
   with applicable policy statements issued by the Sentencing
21  Commission.

22  18 U.S.C. § 3582(c)(2).  The relevant Sentencing Commission policy statement provides as

23  follows:

24  (a) Authority.--

25  (1) In General.--In a case in which a defendant is serving a
   term of imprisonment, and the guideline range applicable to that
26  defendant has subsequently been lowered as a result of an
   amendment to the Guidelines Manual listed in subsection (c) below,
27  the court may reduce the defendant's term of imprisonment as
   provided by 18 U.S.C. 3582(c)(2). As required by 18 U.S.C.
28  3582(c)(2), any such reduction in the defendant's term of

United States District Court

For the Northern District of California

1    imprisonment shall be consistent with this policy statement.

2           (2) Exclusions.--A reduction in the defendant's term of
     imprisonment is not consistent with this policy statement and
3    therefore is not authorized under 18 U.S.C. 3582(c)(2) if--

4           (A)    None of the amendments listed in subsection (c)
                   is applicable to the defendant; or
5           (B)    An amendment listed in subsection (c) does not
                   have the effect of lowering the defendant's
6                  applicable guideline range.

7    U.S.S.G. § 1B1.10(a)(1) and (2).  As the Supreme Court held in *Dillon v. United States*, 130

8    S. Ct. 2683, 2691 (2010), "Section 3582(c)(2) instructs a district court to 'conside[r] the

9    factors set forth in section 3553(a) to the extent that they are applicable,' but it authorizes a

10   reduction on that basis only 'if such a reduction is consistent with applicable policy

11   statements issued by the Sentencing Commission' – namely, § 1B1.10."

12          "Under § 3582(c)(2), a defendant is eligible for a sentence reduction if two prongs

13   are satisfied: (1) the sentence is '*based on*' a sentencing range that has subsequently been

14   lowered by the Sentencing Commission and (2) such a reduction is consistent with

15   applicable policy statements issued by the Sentencing Commission."  *United States v.*

16   *Pleasant*, 704 F.3d 808, 810 (9th Cir. Jan. 2, 2013) (quoting *United States v. Wesson*, 583

17   F.3d 728, 730 (9th Cir. 2009)) (citation and internal quotations omitted), *petition for reh'g en*

18   *banc filed* Jan. 30, 2013.

19                                    **DISCUSSION**

20   **A.    Waiver**

21          The government contends that St. James waived his right to file a § 3582(c)(2)

22   motion in his plea agreement.  Opp. at 5.  It is apparent that St. James could not have

23   knowingly and voluntarily waived his right to seek a sentence reduction under Amendment

24   750, which as not promulgated by the Sentencing Commission until 2011, three years after

25   St. James entered the plea agreement.  *See United States v. Gallon*, CR 08-0813-DLJ,

26   2012 WL 4901419, *2 (N.D. Cal. Oct. 12, 2012) (citing *United States v. Abarca*, 985 F.2d

27   1012, 1014 (9th Cir. 1993)).  In the alternative, "even if defendant had waived his right to

28   bring this motion, under Section 3582, the Court may lower defendant's sentence on its

                                           4

own motion." *Id.*  The court therefore reaches the merits of St. James's motion.

**B.    Career Offender**

St. James contends that he is eligible for sentence reduction under the reduced sentencing guidelines for crack cocaine offenses.  He concedes that the career offender guidelines have not been amended, but argues that although he qualified for career offender status, he was not sentenced as a career offender and is therefore eligible for a sentence reduction.

St. James argues that he was sentenced "based on" the subsequently-amended crack cocaine guidelines and is thus eligible for sentence reduction under *Freeman v. United States*, 131 S. Ct. 2685 (2011).  In *Pleasant*, the Ninth Circuit considered a similar argument and summarized the holding of *Freeman* as follows:

> . . . In *Freeman*, the Supreme Court addressed whether a defendant sentenced pursuant to a Rule 11(c)(1)(C) plea agreement ("a (C) plea" or "a (C) agreement") is eligible for a sentence reduction under § 3582(c)(2).  131 S.Ct. at 2685.  The critical question was whether, assuming there was a relevant Guidelines amendment, such a defendant was sentenced "based on" that amendment.  A four-justice plurality found that a court may "revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytical framework the judge used to determine the sentence or to approve the agreement." *Id.* at 2692-93.
>
> Justice Sotomayor wrote separately and agreed with the plurality, but did so on narrower grounds that make her concurrence controlling.  *See United States v. Austin*, 676 F.3d 924, 927 (9th Cir. 2012).  Specifically, Justice Sotomayor held that a sentence imposed under a (C) plea is "based on" an amended guideline if: (1) the agreement "*expressly uses* a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment"; and (2) that sentencing range was subsequently amended.  *Freeman*, 131 S.Ct. at 2695 (Sotomayor, J., concurring in the judgment) (emphasis added).

*Pleasant*, 704 F.3d at 811.  In *Pleasant*, the defendant pled guilty to possession with intent to distribute crack cocaine, and the district court granted a variance from the Career Offender guidelines and sentenced him to 77 months imprisonment.  The defendant's plea agreement stipulated that "Pleasant should be sentenced under the crack-cocaine guidelines, but it also acknowledged that his status as a Career Offender exposed Pleasant to a sentence as high as 235 months." *Id.* at 809.  Following amendment to the sentencing

United States District Court

For the Northern District of California

guidelines for crack cocaine offenses, Pleasant filed a motion for sentence reduction pursuant to § 3582(c)(2) which the district court granted, reducing the sentence to 60 months.  *See United States v. Pleasant*, Case No. CR 08-771 MHP (N.D. Cal., order filed March 27, 2012).  The government appealed from the order granting the motion for sentence reduction, which the Ninth Circuit reversed and remanded with instructions to reinstate the original sentence.  *Pleasant*, 704 F.3d at 814.

Applying the two-prong test for sentence reductions under § 3582(c)(2), the court in *Pleasant* held that the defendant's sentence was "based on" the crack cocaine guidelines because the plea agreement expressly used § 2D1.1(c) to set the stipulated sentence. Because that guideline was "subsequently amended," the court of appeals held that Pleasant satisfied the first prong of § 3582(c)(2).  704 F.3d at 811 (citing *Freeman*, 131 S. Ct. at 2697).

The issue presented to the court in *Pleasant*, however, was the dispute whether the second prong was satisfied, i.e., whether the sentence reduction would be consistent with the policy statement set forth in § 1B1.10(a)(1), which permits sentence reduction "only if 'the guideline range *applicable to* that defendant has subsequently been lowered as a result of an amendment to the Guidelines.'"  704 F.3d at 811.  The court noted that this issue was not presented in *Freeman*.  *Pleasant*, 704 F.3d at 813 (citing *Ware*, 694 F.3d at 534).  As the court recognized in *Pleasant*, "[t]he central dispute in this appeal is the meaning of 'applicable to' and 'applicable guidelines' under § 1B1.10(a)(1)."  *Id.* at 811. The government argued in *Pleasant*, as here, that the applicable guidelines were the career offender guidelines because Pleasant qualified as a career offender, even though he was not sentenced under those guidelines.  Pleasant argued, on the other hand, that, under *Freeman*, the applicable guideline was § 2D1.1(c) for crack cocaine because the plea agreement called for sentencing to be imposed under that provision.

To decide the issue, the *Pleasant* court turned to the commentary to § 1B1.10, which was modified by Amendment 759 to clarify that the applicable guideline range is determined before consideration of any departure or variance:

6

1         Specifically, Application Note 1(A) clarifies that § 3582(c)(2) "is
2         triggered only by an amendment . . . that lowers the applicable
             guideline range (i.e., the guideline range that corresponds to the
3         offense level and criminal history category determined pursuant to
             § 1B1.1(a), *which is determined before consideration of any*
4         *departure provision in the Guidelines Manual or any variance*)."
             U.S.S.G. § 1B1.10 cmt. n. 1(A) (2011) (emphasis added). This
5         language was added to resolve a circuit split that had arisen over
             whether a defendant's "applicable guideline range" should be derived
6         before or after the application of a departure or variance. U.S.S.G.
             app. C, amend. 759. In short, Amendment 759 makes clear that the
7         applicable guideline is derived pre-departure and pre-variance.

8         Under Amendment 759, Pleasant's applicable guideline range is the
             Career Offender range. The parties agree that Pleasant qualifies as
9         a Career Offender, and his plea agreement outlined the stipulated
             ramifications of his Career Offender status. Pleasant was only able
10        to avoid the Career Offender guidelines because the district court
            granted a downward variance. Accordingly, Pleasant's pre-variance
11        guideline range, i.e., his "applicable guideline range," is the Career
            Offender guideline.

12        Section 6B1.2, which outlines the "Standards for Acceptance of Plea
            Agreements," confirms that a defendant's applicable range is distinct
13        from the range agreed to in a plea agreement. Specifically, § 6B1.2
            allows a court to accept a (C) agreement if "the *agreed sentence* is
14        outside the *applicable guideline range* for justifiable reasons."
            (emphases added). This provision expressly distinguishes between
15        the "applicable guideline range" and the "agreed sentence." Stated in
            terms of Pleasant's plea, the applicable guideline range was the
16        Career Offender range, but the agreed sentence was determined
            under the crack-cocaine range.

17

18 704 F.3d at 812 (footnote omitted). The *Pleasant* court concluded, "In sum, § 1B1.10

19 mandates that the Career Offender guidelines were Pleasant's 'applicable guidelines'; thus,

20 the district court did not have jurisdiction either to hear Pleasant's § 3582(c) motion or to

21 act sua sponte." *Id.*

22       Here, as in *Pleasant*, it is undisputed that St. James qualified as a career offender.

23 Further, the court determined at the time of sentencing that St. James had a total offense

24 level of 34 based on a criminal history category of VI, before departures. As in *Pleasant*,

25 St. James "was only able to avoid the Career Offender guidelines because the district court

26 granted a downward variance." 704 F.3d at 812. Under this Ninth Circuit authority, St.

27 James's applicable, pre-variance guideline range is the career offender guideline range,

28 which was not amended. St. James is therefore not eligible for a sentence reduction

United States District Court
For the Northern District of California

1    pursuant to § 3582(c)(2).

2    **C.    Amendment 759**

3         As the court held in *Pleasant*, the guideline range applicable to St. James is the

4    range established by the Career Offender provisions because "Amendment 759 makes

5    clear that the applicable guideline is derived pre-departure and pre-variance."  704 F.3d at

6    812.  St. James contends that the provisions of Amendment 759 which preclude his

7    eligibility for a sentence reduction are invalid on three grounds: (1) retroactive application of

8    Amendment 759 violates the Ex Post Facto Clause; (2) Amendment 759 violates the

9    separations of powers doctrine; and (3) Amendment 759 is inconsistent with § 3582(c)(2)

10   and the Fair Sentencing Act of 2010 and is arbitrary and capricious.  None of these

11   contentions have merit.

12        **1.    Ex Post Facto**

13        St. James argues that because Amendment 759 became effective on November 1,

14   2011, after St. James filed the instant motion to reduce his sentence, retroactive application

15   of Amendment 759 would violate the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3.  St.

16   James contends that Amendment 759 changes the legal consequences of acts committed

17   before its effective date to his disadvantage by precluding his potential eligibility to benefit

18   from the Commission's decision to amend the guidelines applicable to crack-related crimes.

19   St. James concedes that the Commission described Amendment 759 as a "clarifying"

20   change, rather than announcing a new rule, but he contends that Amendment 759 made a

21   substantive change that disadvantaged him.  Suppl. Br. at 15 (citing *United States v.*

22   *Smallwood*, 35 F.3d 414, 418 n.8 (9th Cir. 1994) ("Respectfully disagreeing with the

23   Sentencing Commission's conclusion that the amendment is only clarifying and not

24   substantive, we find that retroactive application of the SDRC [Serious Dissimilar Remote

25   Crimes] Amendment would violate the ex post facto clause.").

26        The Ninth Circuit has held that a retroactive change in the law violates the Ex Post

27   Facto Clause when it "'creates a *significant* risk of prolonging [an inmate's] incarceration.'

28   A 'speculative' or 'attenuated' risk of prolonging incarceration is insufficient to establish a

violation of the Ex Post Facto Clause." *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1106

(9th Cir. 2011) (quoting *Garner v. Jones*, 529 U.S. 244, 251 (2000)).  In the context of

amended Sentencing Guidelines, "[a]n ex post facto sentencing violation occurs when

application of a later edition of the Guidelines would result in a higher base level." *United*

*States v. Chao Fan Xu*, 706 F.3d 965, 990 (9th Cir. 2013), *as amended on denial of reh'g*

(Mar. 14, 2013) (citing *United States v. Rising Sun*, 522 F.3d 989, 993 n. 1 (9th Cir. 2008)).

St. James does not demonstrate that retroactive application of Amendment 759

creates a significant risk of increasing his term of imprisonment because he remains

subject to the unmodified career offender guidelines.  St. James's ex post facto challenge

to Amendment 759 rests on the argument that if the guideline sentence for his crack

offenses had been at the lower range of 92 to 115 months as recommended under the

amended version of § 2D1.1, rather than the 130- to 162-month range under the former

version of the guidelines, then the court would have sentenced St. James to a lower

sentence when departing from the career offender guidelines.  Suppl. Br. at 22-23.  This

argument is purely speculative and does not establish a violation of the Ex Post Facto

Clause, particularly in light of the record where the court expressly rejected defense

counsel's argument that St. James should be sentenced at the lowest end of the guideline

range that excluded the career offender enhancement.  St. James's attorney argued for a

sentence of 130 months, which was the low end of the crack offense guidelines in effect at

the time of his sentencing, and asked the court not to apply the career offender

enhancement at all.  Trans. at 17-18.  The court determined, however, that St. James's

criminal history warranted application of the career offender provision.  Trans. at 32-33.

The court agreed with the probation officer that the career offender range of 262 to 327

months imprisonment overstated the seriousness of St. James's criminal history, and

imposed a sentence of 200 months, which was about five years less than the career

offender provision, followed by eight years of supervised release.  Trans. at 35.  The court

departed below the advisory guideline range for career offenders, and did not simply pick a

sentence "between the two extremes," as St. James suggests.  Suppl. Br. at 22.  Where

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    the court departed downward from the career offender guideline range, there is no

2    significant likelihood that the court would have imposed an even lower sentence based on a

3    revised guideline range for crack cocaine offenses.  St. James therefore fails to

4    demonstrate an ex post facto violation by application of Amendment 759.

5              **2.     Separation of Powers**

6         St. James argues that application of Amendment 759 is barred by the separation of

7    powers doctrine.  St. James cites Justice Stevens's dissent in *Dillon v. United States*,

8    where he expressed the view that by promulgating § 1B1.10(b)(2), which limits reduction of

9    sentence pursuant to § 3582(c)(2), the Commission "rejected *Booker* 's application to

10   § 3582(c)(2), by purporting to give mandatory force to its own policy statement.  That action

11   presses the bounds of the authority Congress validly gave the Commission in 1984, for it is

12   not clear that Congress has authorized the Commission to create this type of policy

13   statement or to circumvent a decision such as *Booker* on its own accord."  *Dillon v. United*

14   *States*, 130 S. Ct. 2683, 2700 (2010) (Stevens, J., dissenting) (citing *United States v.*

15   *Booker*, 543 U.S. 220 (2005)).  Justice Stevens issued the lone dissent to Justice

16   Sotomayor's majority opinion in *Dillon*, in which all the other Justices joined except for

17   Justice Alito, who did not take part in deciding the case.  The *Dillon* court held that

18   § 3582(c)(2) authorized sentence modification under limited circumstances and was not a

19   plenary resentencing proceeding that would implicate *Booker* concerns.  *Id.* at 2692.

20        The Supreme Court's holding in *Dillon* did not address Justice Stevens's discussion

21   of the separation of powers issue, which was not briefed by the parties.  *Dillon*, 130 S. Ct.

22   at 2692 n.5.  In *Booker*, however, the Supreme Court affirmed its holding in *Mistretta v.*

23   *United States*, 488 U.S. 361 (1989), which held that Congress permissibly granted

24   substantial powers to the Sentencing Commission to set law and policy on sentencing

25   generally, and upheld the Sentencing Guidelines against a separation of powers challenge.

26   In *Booker,* the government argued that by requiring a jury to find Guidelines sentencing

27   factors, such a requirement would be "an unconstitutional grant to the Sentencing

28   Commission of the inherently legislative power to define criminal elements."  543 U.S. at

United States District Court

For the Northern District of California

241.  The *Booker* court rejected this separation of powers argument, reasoning as follows:

> There is no merit to this argument because the Commission's authority to identify the facts relevant to sentencing decisions and to determine the impact of such facts on federal sentences is precisely the same whether one labels such facts "sentencing factors" or "elements" of crimes.  Our decision in *Mistretta*, 488 U.S., at 371, upholding the validity of the delegation of that authority, is unaffected by the characterization of such facts, or by the procedures used to find such facts in particular sentencing proceedings.  Indeed, we rejected a similar argument in *Jones* [*v. United States*, 526 U.S. 227 (1999)]:
>
>> "Contrary to the dissent's suggestion, the constitutional proposition that drives our concern in no way 'call[s] into question the principle that the definition of the elements of a criminal offense is entrusted to the legislature.'  The constitutional guarantees that give rise to our concern in no way restrict the ability of legislatures to identify the conduct they wish to characterize as criminal or to define the facts whose proof is essential to the establishment of criminal liability.  The constitutional safeguards that figure in our analysis concern not the identity of the elements defining criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment; these are the safeguards going to the formality of notice, the identity of the factfinder, and the burden of proof."  526 U.S., at 243, n. 6 (citation omitted).
>
> Our holding today does not call into question any aspect of our decision in *Mistretta*.  That decision was premised on an understanding that the Commission, rather than performing adjudicatory functions, instead makes political and substantive decisions.  488 U.S., at 393.  We noted that the promulgation of the Guidelines was much like other activities in the Judicial Branch, such as the creation of the Federal Rules of Evidence, all of which are nonadjudicatory activities.  *Id.*, at 387.  We also noted that "Congress may delegate to the Judicial Branch nonadjudicatory functions that do not trench upon the prerogatives of another Branch and that are appropriate to the central mission of the Judiciary."  *Id.*, at 388.  While we recognized that the Guidelines were more substantive than the Rules of Evidence or other nonadjudicatory functions delegated to the Judicial Branch, we nonetheless concluded that such a delegation did not exceed Congress' powers.
>
> Further, a recognition that the Commission did not exercise judicial authority, but was more properly thought of as exercising some sort of legislative power, *ibid.*, was essential to our holding. . . .

*Booker*, 543 U.S. at 242-43.

Beyond simply raising the separation of powers issue and quoting extensively from Justice Stevens's dissent in *Dillon*, St. James has not demonstrated that the Sentencing

United States District Court
For the Northern District of California

Commission's promulgation of Amendment 759 violates the separation of powers doctrine. St. James cites no authority holding that Amendment 759 violates the separation of powers doctrine by impermissibly intruding on judges' sentencing authority.[1]  St. James acknowledges the holdings of other circuit courts expressly rejecting this separation of powers argument, but contends that those cases were wrongly decided.  Suppl. Br. at 18 (citing, *inter alia, United States v. Ware*, 694 F.3d 527, 534 (3d Cir. 2012) ("the unfettered judicial discretion that Defendants seek to preserve is at odds with the narrow scope of § 3582(c)(2) sentence reduction proceedings") (citation omitted), *petition for certiorari filed* March 1, 2013); *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1124 (2012) ("Congress has set forth sufficient standards for the Commission in exercising its discretion, and § 1B1.10 does not present a separation-of-powers problem.")).  In the absence of controlling authority to grant relief on this basis, the motion for sentence reduction on the ground that Amendment 759 violates the separation of powers doctrine is DENIED.

### 3.   Conflict with Statutes

St. James contends that Amendment 759's change to the commentary to § 1B1.10 is inconsistent with § 3582(c)(2) and with the Fair Sentencing Act, and is therefore invalid. Suppl. Br. at 19.  First, St. James argues that the Commission's commentary to § 1B1.10 conflicts with § 3582(c)(2), which permits a defendant to seek a sentence reduction when his sentence is "based on" a subsequently amended guideline.  St. James contends that the commentary to § 1B1.10 improperly circumvents the language of § 3582(c)(2) by requiring courts to consider a defendant's "applicable guideline range."  This argument contradicts *Dillon*, as well as *Pleasant* and other Ninth Circuit authority, that expressly apply the commentary to § 1B1.10 as an authoritative limitation on § 3582(c)(2) motions.  As the

---

[1]   In *U.S. v. Waters*, Ninth Circuit Case No. 10-50256, the defendant raised a separation of powers challenge to the career offender guidelines on appeal from the denial of his motion to modify his crack cocaine sentence, *see* 2010 WL 6834475, *13 n.7, but the Ninth Circuit affirmed the district court's ruling without addressing that issue.  *U.S. v. Waters*, 648 F.3d 1114 (9th Cir. 2011).

United States District Court

For the Northern District of California

1    Supreme Court recognized in *Dillon*, § 3582(c)(2) provides for modification of a sentence

2    "by giving courts the power to 'reduce' an otherwise final sentence in circumstances

3    specified by the Commission."  130 S. Ct. at 2690.  *Dillon* recognized that the court is

4    "constrained by the Commission's statements dictating 'by what amount' the sentence of a

5    prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'"  *Id.*

6    at 2691 (citing § 994(u); *Braxton v. United States*, 500 U.S. 344, 348 (1991) (noting that the

7    Commission implemented that power through § 1B1.10)).  *Dillon* established a two step

8    inquiry to determine whether a sentence reduction under § 3582(c)(2) is consistent with §

9    1B1.10: "A court must first determine that a reduction is consistent with § 1B1.10 before it

10   may consider whether the authorized reduction is warranted, either in whole or in part,

11   according to the factors set forth in § 3553(a)."  130 S. Ct. at 2691.

12           Further, the Ninth Circuit considers whether a sentence reduction is consistent with

13   the commentary to § 1B1.10 when applying the two-prong test for a sentence reduction

14   under § 3582(c)(2), that is, whether (1) the sentence is '*based on* a sentencing range that

15   has subsequently been lowered by the Sentencing Commission' and (2) 'such a reduction

16   is consistent with applicable policy statements issued by the Sentencing Commission.'"

17   *Pleasant*, 704 F.3d at 810 (quoting *Wesson,* 583 F.3d at 730).  The *Pleasant* court found

18   that Amendment 759 amended the commentary to § 1B1.10 to address the very question

19   whether the career offender guidelines were the "applicable guidelines" to a defendant who

20   qualified as a career offender, even though he was not sentenced under those guidelines.

21   *Id.* at 811-12 (citing *Stinson v. United States*, 508 U.S. 36, 38 (1993) ("commentary in the

22   Guidelines Manual that interprets or explains a guideline is authoritative unless it violates

23   the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading

24   of, that guideline")).  *See also United States v. Waters*, 648 F.3d 1114, 1116 (9th Cir. 2011)

25   (defendant who was subject to career offender guidelines was ineligible for relief under

26   § 3582(c)(2) based on amendment to crack cocaine offense guidelines because under the

27   applicable policy statement, "amendment does not have the effect of lowering the

28   defendant's applicable guideline range") (citing former U.S.S.G. § 1B1.10 cmt. n.1(A)

13

United States District Court

For the Northern District of California

1   (2011)).  In light of this authority, St. James fails to show that Amendment 759 is

2   inconsistent with § 3582(c)(2).

3          St. James also argues that Amendment 759 violates Congress's intent in passing

4   the FSA to address concerns about the disparity in penalties for crack cocaine offenses

5   and powder cocaine offenses.  Suppl. Br. at 19-21.  These arguments fail to acknowledge

6   that the career offender guidelines were applicable to St. James, and that those guidelines

7   were not amended by the FSA.

8          Further, St. James contends that Amendment 759 is arbitrary and capricious

9   because it fails to provide fairness and avoid unwarranted disparities as the Commission

10  was charged by 28 U.S.C. § 991(b).  Again, St. James fails to demonstrate that

11  Amendment 759, which added clarifying language to resolve a circuit split over whether a

12  defendant's "applicable guideline range" is derived before or after application of a departure

13  or variance, satisfies the arbitrary and capricious standard, i.e., that the Commission "has

14  relied on factors which Congress had not intended it to consider, entirely failed to consider

15  an important aspect of the problem, offered an explanation for its decision that runs counter

16  to the evidence before the agency, or is so implausible that it could not be ascribed to a

17  difference in view or the product of agency expertise."  *Nat'l Ass'n of Home Builders v.*

18  *Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (citation and internal quotation marks

19  omitted).

20         Accordingly, the motion to reduce sentence on the ground that Amendment 759 is

21  inconsistent with a federal statute, or is arbitrary and capricious, is DENIED.

22         Under the holding of *Pleasant*, the court lacks authority to reduce St. James's

23  sentence and does not reach the factors for sentence reduction set forth in § 3553(a).

24  *Dillon*, 130 S. Ct. at 2691.

25  \\

26  \\

27

28

**CONCLUSION**

For the reasons set forth above, St. James's motion for sentence reduction is DENIED.

**IT IS SO ORDERED.**

Dated: April 2, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California